PATTERSON v. CLARK.

There was no abuse of discretion in appointing a receiver.
August 1, 1892.        *Judgment affirmed.*

Receiver. Before Judge MILNER. Catoosa county. At chambers, March 11, 1892.

The exception here is to the appointment of a receiver to take possession of land held by Patterson, the defendant, to rent out the same to the best advantage and to hold the rents subject to further order, unless the defendant would give a hundred dollar bond for the payment of accruing rents. It appears that on February 4, 1890, the defendant conveyed the land to Clark, the plaintiff, by deed, and took a bond to reconvey upon the payment by the defendant of $813.88, which was the aggregate of certain judgments, notes and accounts against the defendant, for the most of which the plaintiff was bound as security; said payment to be made within sixty days. The bond further stipulated that if the defendant failed to pay off the notes, judgments, etc., within sixty days, the plaintiff should pay off the same as part of the purchase price of the land, and was to have the right to pay off any of said claims at any time and hold them as against the defendant, "all of which must be fully paid by said Patterson within sixty days from this date. . Said Clark is to have possession of and control of said land from this date." The petition of Clark alleged that Patterson owed him $752.-99, besides interest at eight per cent., for money paid out for him at his special instance and request on a number of *fi. fas.*, accounts, etc., less $19 rent paid in 1890 by one Calhoun, and less $29.40 received in January, 1892, on a note. He further alleged that these sums were advanced for the benefit of Patterson to enable him to meet his debts, he having been deeply involved and

having applied to Clark to aid him, which Clark did with the hope that by preventing a forced sale of Patterson's property, he might be enabled to sell it at private sale to advantage and thereby save part of what he possessed, and it was solely for this and without hope of fee or reward that Clark interposed his money and credit in Patterson's behalf, the money for the most part having been borrowed by Clark at no little trouble; that Patterson is in possession of the land, and although he has been cultivating part of it he has failed and refused to pay rents for the year 1891, and to give up the possession, although the rents and the possession have been demanded; that he has in his possession some of the products of the place for that year; that he is wholly insolvent and unable to respond in damages, and Clark has grave doubts of the land selling for enough to pay the indebtedness with interest, and has reason to fear that said products will be removed and made way with; that the rents due from Patterson for 1891 are worth $75, "and $30 are still on the place"; that Clark also acquired the title to the property by virtue of a purchase of the same at tax sale on March 3, 1891, for $20, which amount is part of the $752.99. The land has not been redeemed from said purchase, and the time is about to expire. Clark insists upon all his rights in any view of the case. He prays for a receiver to take charge of the products of the land for 1891; that a sufficiency of the same be applied to the rents; that the receiver rent the land for the year 1892; that Patterson be required to pay all the indebtedness due Clark in a given time, or in default thereof that all right, legal or equitable, be divested out of him and be vested in Clark; and that if in this Clark be mistaken, the land be sold and the proceeds applied, first to his payment, with the costs, and the balance to Patterson, etc.

Patterson answered, admitting that he is indebted to

the plaintiff in some amount, which he is unable to give, as all the papers are and have been in the custody of Clark, but he denies that he owes the amount set up in the petition, or anything like it.   The plaintiff has on four occasions rendered statements of this indebtedness, but these are so varying and conflicting that it is impossible to arrive at a true status of affairs therefrom. These statements are attached as exhibits to show the unreliability of the same as to the true amount of plaintiff's demands.   Under plaintiff's pretended friendship and his disinterested solicitude for the preservation and protection of defendant's interests, defendant has on one or more occasions borrowed money, with the plaintiff as security, to pay certain indebtedness, which money was turned over to the plaintiff for that express purpose; but the plaintiff held or used it for a certain length of time, and allowed suits to be brought against the defendant, and now has him charged with the cost in these suits, besides the interest on both debts.   It is not true that plaintiff befriended defendant for the sole purpose of aiding him to effect a sale of his property for the defendant's benefit, but on two or three occasions the plaintiff interposed objections to the private sale of the land. One Sevier agreed to give defendant $1,250 for a portion of his place; the deeds were drawn and signed but not delivered, when the trade was abandoned, and the plaintiff afterwards told the defendant that the executions against him were the cause of his failure to consummate the trade, the plaintiff at the time holding some of these executions; and the defendant believes he interfered to prevent the sale, with a view to the present state of affairs.   Again, in 1891 one Massengill proposed to pay defendant $10 per acre for seventy-five acres of his farm, which was more than enough to discharge all of defendant's indebtedness to plaintiff, and when plaintiff was informed of the proposition he objected, insisting that

defendant could do better than to take it. In the fall of 1891 one Mills proposed, through one Duncan, defendant's neighbor, to give him $950 for the place, and when the proposition was submitted to the plaintiff he objected; and the defendant charges that he prevented him from making any of the above trades, with a view of getting the land for himself through the means he has now instituted, at at least half and perhaps less of its value. The persons proposing to buy were able to have fully complied with their part of the contract. All of the plaintiff's demands against the defendant, except a store account of $4.80, are in judgments, and most of them were so at the time he paid them. There is and was no legal impediment or hindrance to his selling the place at any time according to law, and giving the general public an opportunity to bid for it at public outcry. Defendant denies that by the execution of the deed and bond for title he agreed to pay plaintiff rents annually for the farm, but did for the year 1890, through Calhoun, pay plaintiff $37 which arose from a sale of the produce grown upon the farm, for which he has a credit of only $19, in the fall of 1891. Defendant did agree to market a certain quantity of corn by a certain time, and was proceeding to do so in good faith for the plaintiff's benefit, when the plaintiff came and told him if he could not put the corn on the market sooner than he had agreed to do, not to market at all, and it was impossible for him to market the same sooner. From plaintiff's suggestion the corn was not placed upon the market and is now stored on the place; and plaintiff being notified of the fact, told defendant to do what he pleased with it. Defendant does not intend to remove or make way with it, and while he denies that he owes the same as rent, yet he did and does expect to pay in money to the plaintiff as a credit on his debts the market value of the corn which was to go to his credit. He understood that the

plaintiff bid off the property at the tax sale for defendant's benefit. He went to the plaintiff with the full amount of the bid and cost before the time for redemption was out, and offered to pay the same in full and redeem the land, and plaintiff refused to receive the money. Defendant does not consider himself insolvent; he still owns the land and it has not depreciated in value, but the stringency of money matters renders it hard to sell for cash, and were the same forced to sale at this time it would work great hardship upon defendant and his family on account of the scarcity of ready cash. After the tax sale the plaintiff went to the sheriff and demanded of him to be put into immediate possession of the farm, and since the filing of this suit, has approached defendant and advised him to turn over the place to him, and save the worry and expense of a lawsuit. Defendant has heretofore offered and now offers to convey absolutely to the plaintiff so much of the land as disinterested parties would say was right to discharge what he owes the plaintiff.

The evidence for the plaintiff at the hearing tended to show that the land is worth only $800; that Calhoun applied to Patterson last spring for price of the land, and Patterson gave him no satisfaction; that he then went to Clark, who said that he would guarantee sale at $1,000; that Patterson owns nothing except the land, five or six head of cattle, and his household and kitchen furniture; that Patterson said to Duncan, through whom Mills offered $900 for the place, that he would not take less than $1,250; that Patterson had stated that Mills had offered him $1,000, and he asked Clark what he ought to do, to which Clark replied that if he thought the land worth more, not to appear too anxious to trade, as Clark thought Mills wanted the place, but not to fail to close the trade; that Mills asked Clark what was the lowest price at which the land could

be bought, and Clark replied that he did not know, but it could be bought right, and told Mills to go to Patterson and give him the best price, and Clark would see that he got good title ; that Clark had no personal interest in the trade except to get out of it the money he had advanced for Patterson, and he never in any way prevented a trade, but tried to accomplish one, and wanted Patterson to get more for the land to save some for himself. Patterson is insolvent. He did not tender the money to redeem the land, but simply said he wanted to do so. As the matter was then in litigation, Clark said he would see his attorney and do what he said. A few days afterwards he met Patterson and told him he would take the money, and Patterson said he did not have it. Clark is willing to forego any advantage he may have, if he will pay the money. The statements sent Patterson were always accompanied with statement that they were approximately correct. It is untrue that Clark prevented or attempted to prevent sale of the land. It is the only property given in for taxation by the defendant, and he gave it in for 1891 at $1,250. Clark introduced a large number of executions which he claimed to have paid off.

For the defendant Duncan swore that at the request of Patterson he went to Patterson's house on March 11, 1892, and sold all the corn (about fifty or sixty bushels) claimed as rent. It was in crib on the place. The land has not deteriorated in value; the farm is worth more now than at any time in twenty-four years. In the summer of 1890 Patterson built and repaired about seven hundred panels of fence. More land is enclosed now than at any previous time. The ditches and slues were cleaned out and cleared off by Patterson in 1891. Calhoun swore that he paid Clark in the fall of 1890, on Patterson's debts, $31.58. The land is worth more than the adjoining farm which was purchased by Mills

v 89-45

at $1,250. Patterson swore that all rents for 1891 were still on the farm in crib and he had used none of them; they were worth about $30.

HACKETT & MANN, for plaintiff in error.

R. J. McCAMY, *contra.*